IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CR-88-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| MARKUS LAMAR MARROW, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to exclude identification testimony (DE 33). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motion be granted in part and denied in part without prejudice. (DE 41). Defendant timely filed objections. For the following reasons, the court adopts the recommendation in the M&R.

## STATEMENT OF THE CASE

Indictment filed February 19, 2020, charges defendant with possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. Defendant filed the instant motion seeking to exclude evidence of out-of-court identifications by Patrick Allen and Vicki Allen, and to preclude any in-court identifications by them at trial. Defendant also seeks to exclude evidence of out-of-court identifications by Kelvin Evans, on the basis that it is hearsay. In support of the motion, defendant manually filed a disc containing surveillance video (the "surveillance video"). The government responded in opposition and defendant replied.

The magistrate judge held a hearing on the motion, at which defendant "presented surveillance video footage and a binder of exhibits including police reports, eyewitness identification forms, a newspaper article, maps, and photographs." (M&R (DE 41) at 2). "The government did not object to the court's consideration of these materials, and they were admitted." (Id.). The defense exhibits in the record comprise those materials described in the M&R. By way of further detail, the court notes that these exhibits also include both an original and "enhanced" version of the surveillance video, along with video and audio files of police interviews with Patrick Allen and Vicki Allen, body camera footage, reports of investigation, crime scene logs and reports, and a warrant for arrest. (See Defense Exhibit List).

In the M&R, the magistrate judge notes that the government concedes that Vicki Allen's identification testimony should be excluded. Thus, the magistrate judge recommends granting that part of defendant's motion. The magistrate judge recommends that the remaining part of defendant's motion be denied without prejudice. Defendant's objections and the government's response thereto followed.

## STATEMENT OF FACTS

The court incorporates herein for ease of reference the following summary of the facts set forth in the M&R.[1]

> According to the materials presented, at 11:42 p.m. on January 13, 2020, Officer Burnett of the Oxford Police Department was dispatched to the Goshen Street area of Oxford, North Carolina to respond to a call reporting shots fired. Def.'s Ex. 36 at 45. The video footage shows that Patrick [Allen] was just outside of his mother's house at 127 Alston Court when two individuals shot and robbed him and then ran away from the scene. While Officer Burnett was approaching the area, Vikki [Allen], Patrick's mother, flagged down Officer Burnett and told him the location of where her son had been shot. Def.'s Ex. 36 at 45. Vikki told Officer Burnett that she was on her way to the hospital, and she then left. Id. Office Burnett

---

[1] According to the M&R, this statement of facts "is based on argument, proffer by counsel, what counsel believes to be reasonable inferences, and observations in video and written materials. No witness testified." (M&R (DE 41) at 2 n. 1).

and Granville County Sheriff's Deputy Watson secured the crime scene and taped off the property; while they were working, they were in communication with Sergeant Threatt and Detective Parrish. Id.

Sergeant Threatt responded to Granville Medical Center in reference to a gunshot victim. Id. at 46. The victim, Patrick, was not cooperative with Sergeant Threatt or Corporal Jones. Id. Corporal Jones reported to Sergeant Threatt that Vikki had told Corporal Jones that she was in her house, her son took the dog outside, and she heard a loud bang; she walked outside to see her son lying on the ground asking for help, and Patrick's cousin took him to the hospital. Id.

Corporal Jones also responded to Granville Medical Center and spoke with Patrick in the trauma room. Id. Corporal Jones asked Patrick if he knew who shot him, and Patrick looked away and shook his head no. Id. Corporal Jones spoke with the person who had transported Patrick to the hospital, Evans. Id. Evans told Corporal Jones that he was leaving his brother's house on Alston Court when he heard Patrick yelling. Id. Evans went to investigate and saw that Patrick had been shot. Id. He drove Patrick to the hospital, and on the way, Patrick told Evans that Marcus Marrow was the person who shot him. Id. In his report of the incident, Corporal Jones does not mention whether Evans told Corporal Jones that Patrick and Marrow were in a car together when Marrow was shot. However, at the July 29, 2021 hearing, Marrow's counsel proffered that Evans said that Patrick and Marrow were sitting in a car together, which conflicts with the surveillance video showing that they were outdoors.

Marrow's counsel also proffered that Corporal Jones and Vikki had a conversation outside of Granville Medical Center as Corporal Jones was leaving and Vikki was arriving. Vikki told Corporal Jones that she did not know who shot Patrick, and Corporal Jones said that he did not know, either. Marrow's counsel proffered further that Vikki likely returned home without going into Granville Medical Center because Patrick was being transferred to another hospital and Vikki had returned to 127 Alston Court ten minutes after her exchange with Corporal Jones. Marrow's counsel submitted a map showing that it would take nine minutes to drive from the hospital to Vikki's house. Def.'s Ex. 75. It is therefore unlikely, Marrow contends, that Vikki had time to go into the hospital, find her son, and speak with him before returning home.

Detective Parrish had also responded to 127 Alston Court, investigated the crime scene, spoke with Vikki, and got the surveillance video from her. Def's Ex. 36 at 46-47. At some point, while Detective Parrish was at Vikki's home, Sergeant Threatt told Detective Parrish that Evans had told him that Patrick told Evans that Marrow was the shooter. Id. at 47. Marrow proffered at the hearing that Sergeant Threatt told Detective Parrish about Evans's statement that Marrow and Patrick were in a car together, and Detective Parrish said that the story was changing and it was all secondhand knowledge. Defendant proffered that Detective Parrish's bodycam footage shows that he asked Vikki if Patrick was with Marrow when he

3

was shot, and Vikki said no. To summarize, Marrow's name reached Vikki at that time through several layers of hearsay:

> 1. Patrick allegedly told Evans on the way to the hospital that Marrow was the shooter.
>
> 2. Evans told Sergeant Threatt at the hospital that Patrick had identified Marrow.
>
> 3. Sergeant Threatt told Detective Parrish about the identification.
>
> 4. Detective Parrish asked Vikki if Marrow was with Patrick when he was shot.

Defendant proffered that Detective Parrish also asked Vikki what she had heard, presumably from people in the community, and she said she had heard it was Monique's son and thought his name was Markus. Detective Parrish asked which son, and Vikki said he was "the one with the hair." Detective Parrish asked if he was the light-skinned son, and Vikki said she did not know and that she was just telling him what she had heard.

Detective Parrish compared Marrow's photographs in law enforcement databases to Vikki's surveillance video and concluded that they appeared to be the same person. Id. Detective Parrish consulted with other officers, and they agreed that the subject in the video matched Marrow's photographs. Id. Marrow was subsequently arrested. Id. On January 23, 2020, Vikki shared a newspaper article on Facebook that reported that Marrow had been arrested for shooting Patrick. Def.'s Ex. 32.

On January 29, 2020-approximately fifteen days after the shooting-Patrick and Vikki went to the police station to be interviewed by Sergeant Dickerson and Detective Parrish. Def.'s Ex. 36 at 48. Patrick told the officers that Marrow and Rashawn Evans approached him while he was sitting outside of Vikki's house. Id. Marrow pointed a gun at him and demanded money. Id. Patrick opened the door and tried to go into the house, but Marrow shot him and Rashawn grabbed Patrick's legs and pulled him down. Id. Marrow again demanded money and pointed the gun at Patrick's head. Id. Marrow took approximately $760 from Patrick's inside hoodie, and Patrick told police that the money was drug proceeds. Id. He also stated that on the way to the hospital, he told Evans that Marrow had shot him. Id. Vikki told police that Patrick had told her at some unspecified time that Marrow had shot him. Id.

Marrow also proffered that he and Patrick had met previously. They had spent time in jail together, so Patrick was familiar enough with Marrow's appearance to give a general description of him to police on January 29.

(M&R (DE 41) at 2-5).

4

# COURT'S DISCUSSION

A.     Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.     Analysis

In the M&R, the magistrate judge thoroughly and cogently addressed defendant's arguments in support of his motion. Upon de novo review of the M&R and defendant's objections, the court finds the analysis of the M&R to be correct.[2] In particular, the magistrate judge correctly determined that defendant has not met his burden to show "that the identification procedure was impermissibly suggestive." Holdren v. Legursky, 16 F.3d 57, 61 (4th Cir. 1994). In addition, the magistrate judge correctly determined that the court lacks all the necessary information at this juncture to determine whether Patrick Allen's identification was "reliable." Id. Further, the magistrate judge correctly determined that the court is unable to evaluate on the present record

---

[2] Absent objections to that part of the M&R granting that part of defendant's motion to exclude evidence regarding Vikki Allen's identification, finding no clear error in this determination, the court adopts that part of the M&R without further analysis.

whether testimony regarding statements made by Kelvin Evans properly are excluded as hearsay. See United States v. Woods, 561 F. App'x 270, 274 (4th Cir. 2014). The court writes separately to augment the analysis in the M&R and to address defendant's arguments in his objections.

Defendant argues that he met his burden to show Patrick Allen's January 29, 2020, identification was impermissibly suggestive because "law enforcement was the first to suggest to Vikki Allen that Mr. Marrow was the shooter," and Vikki Allen shared this information to her son. (Def's Obj. (DE 43) at 2). Such asserted facts, however, do not prove, in the context of this case, that the "identification procedure is so impermissibly suggestive as to give rise to the very substantial likelihood of misidentification." United States v. Johnson, 114 F.3d 435, 441 (4th Cir. 1997). Rather, they raise a question "for the jury to weigh." Manson v. Brathwaite, 432 U.S. 98, 116 (1977).

In particular, the totality of the circumstances preclude a judicial determination of substantial likelihood of misidentification and require leaving this issue for consideration by the jury. For example, the account of the January 29, 2020, interview by Dickerson in the report of investigation states that officers began the interview "by asking [Patrick] Allen to just tell us what happened." (Ex. 36 at 0047).[3] According to the report of investigation, officers did not ask defendant to state the identity of the shooter, but rather, without prompting, Patrick Allen stated that "'Markus' came up with the gun and said Gimme the money." (Id. at 0048). Patrick Allen made several other references to defendant in the course of the interview, and described him. (Id.). According to the report of investigation, Allen also stated, without prompting, that he told Evans defendant shot him. (Id.). In sum, while defendant contends that Vicki Allen shared a law enforcement suggestion to Patrick Allen, the report of investigation tends to show that the police

---

[3] Page numbers specified in citations to exhibits are to numbers imprinted at the bottom right corner of exhibit pages as they are presented in the exhibit binder admitted by the magistrate judge at hearing.

6

did nothing impermissible to elicit an identification from Patrick Allen. Testimony, which is for the jury to weigh, may shed additional light on the information provided by officers. See Manson, 432 U.S. at 116.

In addition, the surveillance video provides sufficient evidence of Patrick Allen's own opportunity to identify defendant as a shooter, coupled with evidence that defendant previously had dealings with Patrick Allen, to create a jury issue as to the credibility of Patrick Allen's identification. (See Ex. 19; Ex. 36 at 48). Both when defendant was first walking up the steps in the video and after he was dragged back down the steps, the video provides evidence of Patrick Allen's opportunity to identify the shooter as defendant. (See Ex. 19). While defendant disputes the significance of the surveillance video, this may also be subject to additional testimony, which is for the jury to weigh. See Manson, 432 U.S. at 116.

Defendant also argues that the magistrate judge erred by not making a definitive determination as to reliability, and that this court should make a reliability determination outside of the presence of the jury. As an initial matter, a court's determination as to the "reliability" of an identification is not required if defendant, as here, does not meet the burden at the first step of the analysis of showing that the identification procedure was "impermissibly suggestive." See Johnson, 114 F.3d at 441; see, e.g. United States v. Saunders, 501 F.3d 384, 389–90 (4th Cir. 2007) ("First, the defendant must show that the photo identification procedure was impermissibly suggestive. Second, if the defendant meets this burden, a court considers whether the identification was nevertheless reliable in the context of all of the circumstances.").

In any event, the burden remains on the defendant to demonstrate that an identification is inadmissible. See Johnson, 114 F.3d at 441. A determination that the court lacks all the necessary information at this juncture to determine whether Patrick Allen's identification was reliable does

7

not require exclusion of the testimony prior to trial. Holdren, 16 F.3d at 61. "[T]he exclusion of identification evidence is a drastic sanction that is limited to identification testimony which is manifestly suspect." Fowler v. Joyner, 753 F.3d 446, 454 (4th Cir. 2014). Instead, the court may revisit the issue following presentation of additional evidence at trial, or such evidence may be left "for the jury to weigh." Manson, 432 U.S. at 116; see Neil v. Biggers, 409 U.S. 188, 201 (1972). Indeed, "the only duty of a jury in cases in which identification evidence has been admitted will often be to assess the reliability of that evidence." Watkins v. Sowders, 449 U.S. 341, 347 (1981) (emphasis in original).

"[C]ross-examination before the jury is generally sufficient to determine the trustworthiness of identification evidence," and "the due process clause of the Fourteenth Amendment does not invariably require a judicial determination of this issue outside the presence of the jury." United States v. Muse, 83 F.3d 672, 675 (4th Cir. 1996). "[T]o require a hearing outside the jury's presence, circumstances must be unusual or particularly prejudicial," such as in a case with a "claim of prosecutorial misconduct." Id. at 675-676 (quotations omitted). Here, defendant has not established unusual or particularly prejudicial circumstances that would warrant a hearing outside the presence of the jury.

Defendant argues that the delay in Patrick Allen's identification, approximately two weeks after the shooting, coupled with officers' suggestion of Marrow to Vicki Allen, is sufficient to establish unreliability. "Factors used in assessing reliability include: (1) witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention at the time of offense; (3) the accuracy of witness' prior description of the perpetrator; (4) the witness' level of certainty when identifying the defendant as the perpetrator at the time of the confrontation; and (5) the length of time between the crime and the confrontation." Johnson, 114 F.3d at 441. Here, the

first four factors are highly dependent upon Patrick Allen's testimony, officers' testimony, and the jury's own assessment of the surveillance video, and other evidence, none of which have been presented through testimony at trial. While defendant ultimately may show that Patrick Allen's identification is not reliable, there is no basis at this juncture for excluding it from the jury's consideration in light of all the circumstances.

Finally, defendant argues that the court should make a ruling now on the admissibility of Patrick Allen's statements to Kelvin Evans, in light of the rule against hearsay. However, it is premature to exclude all testimony about such statements, before and until there is a witness on the stand, and before the purpose of such testimony is considered. Here, Patrick Allen's statements may be offered for purposes other than the truth of the matter asserted, and there may be evidence presented, not yet in the record, regarding the circumstances under which the statements were made such that they could be admitted under an exception to the hearsay rule. See, e.g., Fed. R. Evid. 801(c); 803(1), (2).

## CONCLUSION

Based on the foregoing, upon de novo review, the court ADOPTS the M&R (DE 41). Defendant's motion (DE 33) is GRANTED IN PART and DENIED IN PART without prejudice, as set forth herein. In particular, that part of defendant's motion pertaining to identification testimony of Patrick Allen and Kelvin Evans is DENIED WITHOUT PREJUDICE. That part of defendant's motion pertaining to identification testimony of Vicki Allen is GRANTED.

SO ORDERED this the 15th day of December, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge